PEOPLE v MESSENGER

Docket No. 178923. Submitted September 5, 1996, at Detroit. Decided January 21, 1997, at 9:15 A.M. Leave to appeal sought.

William Messenger was convicted by a jury in the Recorder's Court for the City of Detroit, Prentis Edwards, J., of first-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony. He was sentenced to life imprisonment for the murder conviction, to be served concurrently with a sentence of ten to fifteen years for the assault conviction and consecutively to a sentence of two years for the felony-firearm conviction. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in denying the defendant's motion for a mistrial that was based on a juror's acknowledgment that he used a dictionary or a law book to find the definition of premeditation. Even if the jurors utilized the dictionary definition, the defendant was not prejudiced because the trial court's instructions regarding premeditation were substantively identical to the dictionary definition.

2. The trial court's initial instructions were not erroneous. Manifest injustice will not result from the refusal of the Court of Appeals to further consider whether the trial court erred in failing to give jury instructions that were not requested by the defendant. No error results from the omission of an instruction where, as here, the charge as a whole covers the substance of the omitted instruction.

3. A remand of the case to the trial court to allow the defendant to move for a new trial on the basis of newly discovered evidence is not warranted because the defendant did not demonstrate by affidavit or an offer of proof that the evidence was newly discovered.

4. Alleged improper prosecutorial comments to which the defendant did not object at trial do not require reversal. The only incident that was error was the prosecutor's request that the defendant comment with regard to the credibility of the prosecution's witnesses. The error does not require reversal because it was curable with a limiting instruction.

5. Defendant failed to establish that his counsel provided ineffective assistance.

Affirmed.

1. JURY — MISCONDUCT — MOTIONS AND ORDERS — MISTRIAL.

A trial court abuses its discretion in denying a motion for a mistrial based on juror misconduct only where the misconduct affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment; a new trial will not be granted if no substantial harm was done, even though the misconduct may merit a rebuke from the trial court; misconduct can be demonstrated with evidence pertaining to outside or extraneous influences, but not with evidence indicating matters that inhere in the verdict, such as juror thought processes and interjuror inducements.

2. JURY — USE OF DICTIONARY.

A jury's use of a dictionary to define a relevant legal term is error, but is not prejudicial per se; the trial court should determine whether the jury actually substituted the dictionary definition for that given in the instructions and, if so, whether use of the dictionary definition resulted in prejudice to the defendant; there is no prejudice where the court's instructions are substantively identical to the dictionary definition.

3. APPEAL — IMPROPER PROSECUTORIAL COMMENTS.

Improper prosecutorial comments are grounds for reversal where they deny the defendant a fair and impartial trial; appellate review of prosecutorial remarks generally is precluded absent an objection, but the Court of Appeals will reverse in the absence of an objection where a curative instruction could not have eliminated the prejudicial effect of the remarks or where a failure to review the issue would result in a miscarriage of justice.

4. WITNESSES — USE OF ALIAS.

It is inappropriate for a prosecutor to inquire about a defendant's use of an alias on some past, unspecified occasion; such questions are proper, however, where the evidence is relevant to the witness' credibility under MRE 608 and MRE 609.

5. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL.

A defendant seeking to establish ineffective assistance of counsel must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair and unreliable.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Douglas P. Dwyer*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Robyn B. Frankel*), for the defendant on appeal.

Before: YOUNG, P.J., and TAYLOR and R. C. LIVO*, JJ.

TAYLOR, J. Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, assault with intent to commit murder, MCL 750.83; MSA 28.278, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to mandatory life imprisonment for the murder conviction, to be served concurrently with a ten- to fifteen-year sentence for the assault conviction and consecutively to a two-year sentence for the felony-firearm conviction. He appeals as of right, and we affirm.

Defendant's case went to the jury with instructions that included the offense of first-degree premeditated murder. That afternoon, a juror sent the trial court a note asking "how much time is required, [sic] does it take for premeditation?" The court returned the note to the jury with the response of "please give the words in the instructions that I gave you their ordinary meaning."

The following morning one of the jurors gave the bailiff a note that stated:

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

Premeditation: forethought, the giving of consideration to a matter beforehand for some length of time, however short. As one of the elements of first-degree murder, the term is often equated with intent and deliberation, though it is said that more substantial contemplation [is required], and should be confined to instances of real and substantial reflection.

The note also contained citations to legal authority. The jury reconvened at approximately 9:30 A.M. and, ten minutes later, the court called the jury into the courtroom and questioned the juror who wrote the note. The juror acknowledged finding the definition in "a dictionary or some law book." The trial court then asked all the jurors if they had "been using" the definition of premeditation and deliberation that the court gave in its instructions, and the foreperson replied, "that's what we've been trying to do." The court then reread its instructions for first-degree murder[1] and reminded the jury to give the words and terms in the instruction their ordinary meaning. After the jury resumed deliberating, defendant moved for a mistrial, arguing that, in light of the second note, there was no way to be sure that the jurors were fol-

---

[1] The trial court instructed the jury in part as follows:

Third, that this intent to kill was premeditated, that is, thought out beforehand.

Fourth, that the killing was deliberate, which means that the defendant considered the pros and cons of the killing and thought about and chose his actions before he did it. There must have been real and substantial reflection, long enough to give a reasonable person a chance to think twice about the intent to kill.

The law does not say how much time is needed. It is for you do decide if enough time passes under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection.

lowing the court's instructions. The court denied the motion.

Defendant argues that the trial court should have granted his motion for a mistrial. We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *People v Sowders*, 164 Mich App 36, 47; 417 NW2d 78 (1987). A trial court's denial of a motion for a mistrial based on juror misconduct is an abuse of discretion only where the misconduct was such that it affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment. A new trial will not be granted if no substantial harm was done thereby to the defendant, even though the misconduct may merit a rebuke from the trial court if brought to its notice. *People v Rohrer*, 174 Mich App 732, 740; 436 NW2d 743 (1989). Misconduct can be demonstrated with evidence pertaining to outside or extraneous influences, but cannot be demonstrated with evidence indicating matters that inhere in the verdict, such as juror thought processes and interjuror inducements. *People v Smith*, 106 Mich App 203, 211-212; 307 NW2d 441 (1981).

We adopt the analysis utilized by the Sixth Circuit Court of Appeals in *United States v Gillespie*, 61 F3d 457 (CA 6, 1995), to review defendant's claim. In *Gillespie*, a deliberating jury sent the trial court a note asking for a more detailed description of reasonable doubt. The court directed the jury to consult the instructions and declined to further address the request. The next day, after the verdict had been reached but before the jury had been discharged, the court was informed that a dictionary had been found in the jury room. The court questioned the jury and

learned that a juror had brought a dictionary into the jury room and read aloud the definition of "reasonable." At defense counsel's request, the trial court questioned all the jurors and they said that they relied only on the definitions in the jury charge and not on the dictionary or any outside source. The court then denied the defendant's motions for a mistrial and for a new trial. *Id.* at 458-459.

The Sixth Circuit Court of Appeals stated that a jury's use of a dictionary to define a relevant legal term is error, but it is not prejudicial per se. *Gillespie, supra* at 459. In such a situation, the trial court should first determine whether the jury actually substituted the dictionary definition for that given in the instructions. If so, the court must then determine whether any use of the dictionary definition resulted in prejudice to the defendant. *Id.* The court also stated that a juror's declaration at the hearing exploring these questions is not inherently suspect and that there is no specific procedure that a trial court must follow when informed that the jury may have used a dictionary. The court indicated that the trial judge has extensive discretion in devising procedures to ensure that the jury uses the court's instructions and not a dictionary definition. *Id.* at 460. In light of these principles, the Sixth Circuit Court of Appeals found that the trial court had not abused its discretion in denying the defendant's motion for a new trial. *Id.*[2]

In the present case, the trial court did not make explicit findings regarding whether the jurors actually substituted the definition in the note for the definition

---

[2] See further anno: *Prejudicial effect of jury's procurement or use of book during deliberations in criminal cases*, 35 ALR4th 626.

given in the instructions. However, even if the jurors utilized the dictionary definition, defendant was not prejudiced. This is because the court's instructions regarding premeditation were substantively identical to the dictionary definition. Under such circumstances, there was no prejudice even if the jurors may have used the dictionary definition. See *Franks v State*, 306 Ark 75, 80-81; 811 SW2d 301 (1991) (jurors' use of dictionary definition of "premeditated" was not prejudicial error because the dictionary definition was clearer than the words contained in the instructions); *State v Melton*, 102 NM App 120, 124; 692 P2d 45 (1984) (no error where dictionary definitions did not vary from usual ordinary meanings of words or from meanings contained in trial court's instructions); *State v McNichols*, 188 Kan 582, 588-590; 363 P2d 467 (1961) (no error where jurors consulted dictionary for definition of "culpable" where that term was not defined by the court and enabled the jurors to better understand the court's definition of "culpable negligence").

Defendant also argues that the trial court erred in (1) failing to instruct the jurors that they were not to consider any outside influences and (2) failing to instruct the jurors to disregard the contents of the dictionary definition once they were exposed to it. Because defendant did not request such instructions, review and reversal may be granted only if a miscarriage of justice would otherwise result. *People v Ullah*, 216 Mich App 669, 676-677; 550 NW2d 568 (1996); *People v Harris*, 190 Mich App 652, 660-661; 476 NW2d 767 (1991). Furthermore, no error results from the omission of an instruction if the charge as a

whole covers the substance of the omitted instruction. *Id.* at 664.

The trial court's initial instructions were not erroneous. Defendant correctly observes that the instruction proposed in his appellate brief could have been given. However, this does not mean that the trial court had to give such an instruction, particularly where defendant did not request such an instruction. Having examined the jury instructions in their entirety, we conclude that manifest injustice would not result if we decline to further review this issue.

Defendant is correct that the court did not explicitly instruct the jury to disregard the dictionary definition of premeditation. The trial court did, however, reread the first-degree murder instructions and instruct the jury to give the words and terms their ordinary meaning. We find that these instructions sufficiently conveyed to the jurors that they were not to use the dictionary definition in their deliberations. Therefore, the charge as a whole covered the substance of the omitted instruction, and defendant is not entitled to relief on this basis. *Harris, supra.*

Defendant further argues that his case should be remanded to the trial court so that he can move for a new trial on the basis of newly discovered evidence. Defendant filed a motion to remand on this basis on September 29, 1995, which this Court denied on November 1, 1995. This Court's denial noted that defendant had failed to demonstrate by affidavit or an offer of proof that the evidence was newly discovered. Defendant did not move for rehearing or appeal this Court's order denying his motion. Defendant continues to argue in his appellate brief that he is entitled to a remand. However, defendant's argument in

his appellate brief is identical to the argument that was in his motion. Given defendant's continued failure to file an affidavit or make an offer of proof showing the evidence is newly discovered, we decline to remand.

Defendant next objects to remarks the prosecutor made at trial. Improper prosecutorial comments are grounds for reversal where they deny the defendant a fair and impartial trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995); *People v Allen*, 201 Mich App 98, 104; 505 NW2d 869 (1993). Defendant did not, however, object to any of the remarks he now claims were improper. Appellate review of prosecutorial remarks is generally precluded absent an objection because the trial court was deprived of an opportunity to cure the error. *Ullah, supra* at 679. An appellate court will reverse in the absence of an objection if a curative instruction could not have eliminated the prejudicial effect of the remarks[3] or

---

[3] Although jurors are presumed to follow instructions, *People v Hana*, 447 Mich 325, 351; 524 NW2d 682 (1994), some errors cannot be cured with an instruction. *Bruton v United States*, 391 US 123, 135; 88 S Ct 1620; 20 L Ed 2d 476 (1968) (there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of the failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored); *People v Humphreys*, 24 Mich App 411, 415; 180 NW2d 328 (1970) (sometimes the prejudice created by an improper line of argument cannot be eliminated, no matter the amount of cautionary instruction); *People v LaForte*, 75 Mich App 582, 584; 256 NW2d 44 (1977) ("We doubt that a timely objection and curative instruction would have erased the errors. Whatever the metaphor, the damage was irreparable: the bell could not have been unrung; the ink stain could not have been eradicated; the stench could not have been ignored."); *Dunn v United States*, 307 F2d 883, 886 (CA 5, 1962) (after the thrust of the saber it is difficult to say "forget the wound"; if you throw a skunk into the jury box, you cannot instruct the jury not to smell it).

where failure to review the issue would result in a miscarriage of justice. *Id.*

Defendant first points out that the prosecutor asked him to comment regarding the truthfulness of other witnesses' testimony.[4] Similar questions were found improper in *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). However, the *Buckey* Court also ruled that such questions are curable with a limiting instruction. *Id.* at 18. Therefore, the questions in the present case were also curable with a limiting instruction and do not require reversal.

Defendant also claims that the prosecutor improperly asked him if he gave the police a false name when they arrested him. This Court has held that it is inappropriate for a prosecutor to inquire about a defendant's use of an alias on some past, unspecified occasion. *People v Thompson*, 101 Mich App 609, 613; 300 NW2d 645 (1980). However, where the evidence is relevant to the witness' credibility under MRE 608 and MRE 609, such questions are proper. *Thompson, supra* at 614. See also *People v Pace*, 98 Mich App 714, 718; 296 NW2d 345 (1980). We find that defendant's use of an alias at the time of his arrest was relevant with regard to his credibility. Therefore, the prosecutor's questions were not improper.

Defendant next argues that the prosecutor's closing argument shifted the burden of proof. We have examined the allegedly improper comments and find them to be nothing more than a reasonable inference

---

[4] During his cross-examination, the prosecutor asked defendant the following questions: "So, is Mr. Webster lying when he says all he heard was about ten or so shots rapidly fired?" and "So the Sergeant who testified this morning is mistaken or lying about the house?" and "Just about everyone in this case is lying but you?"

based on the evidence presented at trial, which is proper. *People v Vaughn,* 200 Mich App 32, 39; 504 NW2d 2 (1993).

Defendant also argues that the prosecutor improperly appealed to the sympathy of the jury. A prosecutor's comments must be considered in light of defense arguments. *People v Spivey,* 202 Mich App 719, 723; 509 NW2d 908 (1993). In this case, the prosecutor was not appealing to the jury for sympathy, but was responding to defense counsel's argument that a witness who cried on the stand was not sincere. We find no error.

Next, defendant argues that the cumulative effect of the misconduct deprived him of a fair trial, even if no single instance did so. This argument fails, however, because the only incident that was improper was the prosecutor's request that defendant comment with regard to the credibility of the prosecution's witnesses. This error does not require reversal because it was curable with a limiting instruction and there is no cumulative effect from a single error. See *Bahoda, supra* at 292, n 64.

Finally, defendant argues that he was denied effective assistance of counsel by his attorney's handling of the juror who conducted outside research and because his attorney failed to object to the alleged incidents of prosecutorial misconduct. "[I]n order to establish that counsel was ineffective, defendant must show that but for counsel's error there is a reasonable probability that the result of the proceeding would have been different *and* that the result of the proceeding was fundamentally unfair or unreliable." *People v Poole,* 218 Mich App 702, 718; 555 NW2d 485 (1996) (emphasis in original).

With respect to the outside research by the juror, defendant argues that his attorney should have objected to the trial court's jury instructions regarding that matter. As discussed above, defendant has not established that he was prejudiced by the juror's outside research or by the way in which the trial court handled the matter. Thus, defendant has not established that he was prejudiced by his attorney's failure to object to the court's instructions regarding this issue.

With respect to defense counsel's failure to object to alleged instances of prosecutorial misconduct, we have already found that only the questions regarding the credibility of witnesses were improper. Defense counsel's failure to object to the other instances was not deficient assistance. With respect to the prosecutor's asking defendant to comment regarding the credibility of other witnesses, we do not find that defendant was prejudiced by his attorney's failure to object. A defendant is not unfairly prejudiced by such questions if he "dealt rather well" with them. *Buckey*, *supra* at 17. Defendant did so in the present case. In this context, like the *Buckey* Court, we "fail to discern how [defendant] was harmed by the questions." *Id.* Therefore, defendant cannot establish that he was prejudiced by his attorney's failure to object.

Affirmed.