# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL JOHN LINENBERG,

Defendant-Appellant.

UNPUBLISHED
August 20, 2015

No. 320008
Wayne Circuit Court
LC No. 12-009954-FH

Before: OWENS, P.J., and SAAD and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of accosting a child for immoral purposes, MCL 750.145a, two counts of fourth-degree criminal sexual conduct (CSC), MCL 750.520e(1)(a) (child over 13 but less than 16 years old), and one count of indecent exposure, MCL 750.335a. Defendant was sentenced to four months' jail time and five years' probation for each of the charges, to be served concurrently. We affirm.

## I. BACKGROUND

In September 2012, defendant was charged in relation to an incident involving MS, a friend of defendant's daughter. Defendant was arrested and the matter proceeded to trial. Thirteen jurors were impaneled for trial, and following closing arguments, the trial court selected Juror No. 8 to act as an alternate. In the afternoon of the fourth day of trial, the twelve remaining jurors began deliberations. The trial court dismissed the jury at 3:25 p.m., and ordered them to return the next morning at 9:00 a.m. to continue deliberations. On the fifth day of trial, the court announced that it received notes that the jury was unable to reach a unanimous decision on any of the five counts, and that one juror was ill. After conferring with counsel for both parties, the trial court decided to allow the jury to break for lunch. When the parties returned from lunch, defense counsel requested a mistrial. The trial court denied defendant's request, instead choosing to read the jury the deadlock jury instruction.

After the court read the deadlock jury instruction, the court received another note from the jury, stating that Juror No. 1 had a migraine headache and was unable to proceed that day. The trial court stated that it intended to dismiss the jury. Defense counsel requested a mistrial for a second time, but the trial court refused. Instead, the court announced that it would dismiss Juror No. 1 and replace her with the alternate, Juror No. 8, the following day. The court then

-1-

ordered the eleven remaining jurors to return the next morning at 9:00 a.m., and excused the jury without further instruction. The next morning, Juror No. 8 arrived and participated in deliberations with the eleven existing jurors. The record does not indicate that the trial court provided any additional instructions to the jurors at this time. At 10:06 a.m., the jurors sent a note stating that they had reached a conclusion, and at 10:22 a.m., the jury entered its verdict of guilty on all counts on the record.

After the jury returned its verdict, defendant filed a motion for a new trial, or, in the alternative, a motion for an evidentiary hearing. Attached to his motion, defendant provided affidavits from both Juror No. 1 and Juror No. 8. Juror No. 8 stated that when she arrived to begin deliberations, no one told the jurors that they should start their deliberations anew, and she "did not realize that the jury should do that." Juror No. 8 said that when she entered the jury room, she believed defendant was not guilty, but after going "over the information presented in court" and hearing from the other jurors, she changed her mind. Juror No. 1 stated that when the jurors first began deliberating, they took a poll that returned seven votes of guilty and five votes of not guilty. The next day, the vote composition changed to 11 for guilty and one for not guilty. Juror No. 1 said she did not believe defendant was guilty, and was not going to change her vote, but the other jurors pressured her, asking, "What if it was your daughter?" and encouraging her to disregard statements from the attorneys and the judge. Juror No. 1 explained that she "had a slight migraine headache to start with, and [the other jurors] constant pressuring to vote 'guilty' caused it to escalate."

Following a hearing, the trial court denied defendant's motion for a new trial or an evidentiary hearing. The court reasoned that there was sufficient cause to excuse Juror No. 1, and that Juror No. 8's affidavit suggested that the jury deliberations began anew once she joined, despite the absence of an explicit instruction by the trial court.

## II. JUROR MISCONDUCT

Defendant first argues that the trial court deprived him of his constitutional right to a fair trial when it refused to grant his motion for a mistrial or an evidentiary hearing after considering evidence that Juror No. 1 was intimidated during jury deliberations. We disagree.

We review constitutional questions, such as the right to a fair trial, de novo. *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). We review a trial court's denial of a motion for a mistrial based on juror misconduct for an abuse of discretion. *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997). An abuse of discretion does not occur "unless the party seeking the new trial can show 'that the misconduct [was] such as to affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment.' " *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013), quoting *People v Nick*, 360 Mich 219, 230; 103 NW2d 435 (1960) (alteration in original). In order to upset a jury verdict on the basis of juror misconduct, a criminal defendant must show that the alleged misconduct resulted in prejudice. *People v Miller*, 482 Mich 540, 553-555; 759 NW2d 850 (2008). Jurors are presumed to be impartial unless the contrary is shown. *Id.* at 550. A defendant cannot demonstrate juror misconduct "with evidence indicating matters that inhere in the verdict, such as juror thought processes and interjuror inducements." *Messenger*, 221 Mich App at 175.

Moreover, a defendant may not impeach a jury verdict by admission of juror testimony unless the jury verdict was affected by extraneous influences. See *People v Fletcher*, 260 Mich App 531, 539; 679 NW2d 127 (2004). "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). To establish error requiring reversal, a defendant must prove that the jury was exposed to an extraneous influence and that the influence "created a real and substantial possibility that they could have affected the jury's verdict." *Id*. at 89.

In this case, defendant does not claim that extraneous influences denied him his right to a fair and impartial jury. Instead, he alleges only that other jurors coerced and intimidated Juror No. 1, which prejudiced him. Accordingly, use of Juror No. 1's affidavit to invalidate the jury's verdict is improper. *Fletcher*, 260 Mich App at 539. Further, even accepting all of the statements in Juror No. 1's affidavit as true, the described conduct merely represents interjuror inducements that cannot form the basis for a finding of juror misconduct. See *Messenger*, 221 Mich App at 175. Therefore, defendant is not entitled to relief on this issue.

Defendant also asserts that he was denied a fair trial because the trial court spoke with Juror No. 1 and decided to replace her with an alternate juror without his consent. On this point, defendant relies on MCR 6.414(B), which states, "The court may not communicate with the jury or any juror pertaining to the case without notifying the parties and permitting them to be present." However, MCR 6.414 was repealed effective September 1, 2011, which predates defendant's trial. MCR 6.414, repealed June 29, 2011, 489 Mich cxciii-cxcvi (2011).

Alternatively, defendant contends that he is entitled to a new trial because he had a constitutional right to be present at all stages of the proceedings, and the trial court replaced Juror No. 1 with an alternate juror when he was not present. Our review of the record does not reveal any instances of the trial court engaging in ex parte communications with the jurors outside of defendant's or his attorney's presence before dismissing Juror No. 1 due to health issues. Further, defendant does not provide any evidence or citation to the record indicating that such communications occurred. "Because defendant has not supported his argument with citations to the record, as required by MCR 7.212(C)(7), we need not consider this argument." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

## III. JURY INSTRUCTIONS

Defendant next argues that the trial court erred when it failed to instruct the jury to begin its deliberations anew after Juror No. 8 joined the jury. Defendant argues that this error was not harmless and deprived him of his constitutional right to a fair trial. We disagree.

MCR 6.411 states, in relevant part, "If an alternate juror replaces a juror after the jury retires to consider its verdict, the court shall instruct the jury to begin its deliberations anew." A trial court's failure to instruct the jury to begin deliberations anew once an alternate juror has been brought back is plain error of "constitutional magnitude." *People v Tate*, 244 Mich App 553, 567; 624 NW2d 524 (2001). However, "a constitutional right may be forfeited by a party's failure to timely assert that right." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In this case, defendant's attorney forfeited the asserted error by failing to object to the lack of

-3-

instruction to begin deliberations anew once the alternate juror was called back to join the jury. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (defining forfeiture as "the failure to make the timely assertion of a right") (citation and internal quotation marks omitted); see also *Carines*, 460 Mich at 764-765 ("[A] contemporaneous objection provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.' "), quoting *People v Grant*, 445 Mich 535, 551; 520 NW2d 123 (1994). Thus, to warrant relief in this case, defendant must show that 1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the error affected the outcome of the lower court proceedings. *Carines*, 460 Mich at 763. Further, even if each of the three *Carines* prongs is satisfied, reversal is only required if the forfeited error "resulted in the conviction of an actually innocent person or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Tate*, 244 Mich App at 567, citing *Carines*, 460 Mich at 774.

In this case, the prosecution concedes that the trial court did not instruct the jury to begin its deliberations anew once the alternate juror joined the jury, which established constitutional error. See *Tate*, 244 Mich App at 567. The prosecution argues, however, that this error was harmless because the alternate juror indicated in her affidavit that when she entered the jury room, she believed defendant was not guilty, but after reviewing the evidence and hearing from the other jurors, she changed her mind. Under the circumstances of this case, we conclude that the trial court's failure to instruct the jury to begin its deliberations anew was not outcome determinative and did not seriously affect the fairness of defendant's trial.

In *Tate*, this Court concluded that a trial court's erroneous instruction that a jury need not begin its deliberations anew after an alternate juror joined the jury was harmless error when "[t]he alternate sat through the entire trial, the court instructed the jury to 'share with the [alternate] how you have been deliberating,' and nothing prevented the jury from beginning anew." *Tate*, 244 Mich App at 567-568 (second alteration in original). Like the circumstances in *Tate*, in this case, Juror No. 8 sat through the entire trial, and nothing prevented the jury from beginning its deliberations anew after she was called back to join the jury. In fact, Juror No. 8 stated in her affidavit that she only reached her conclusion regarding defendant's guilt after going over the evidence from trial and hearing the perspectives of the other jurors, indicating that the jury renewed its deliberations once she arrived.[1] Further, unlike the more egregious error in *Tate*, which was still considered harmless, this case involves a lack of proper jury instruction, rather than a blatantly erroneous instruction from the trial court. Because the record suggests that the jury thoroughly considered the evidence presented again once Juror No. 8 joined the deliberations, defendant has not demonstrated that the trial court's instructional error was outcome determinative, or that it seriously affected the fairness of his trial.

---

[1] It also bears mentioning that the jury deliberated for more than an hour before reaching its verdict after Juror No. 8 arrived. Considering the evidence presented at trial and that this case involved a single incident of misconduct, we believe this represents more than a sufficient amount of time for the newly composed jury to reach a fully reasoned conclusion.

Defendant also claims that "the record is not clear as to whether the trial court ever provided the jury instructions it gave to the empaneled jury to the alternate juror when she returned to the court to serve on the jury." In fact, the record clearly reflects that the trial court did not dismiss the alternate juror until after it read the jury instructions. There is no requirement that the trial court reinstruct the jury with all of its instructions once an alternate replaces a juror. Cf. *People v Parker*, 230 Mich App 677, 680-681; 584 NW2d 753 (1998) (holding that a trial court does not abuse its discretion when it fails to repeat instructions addressing areas not covered by a jury's specific request). Therefore, defendant is not entitled to relief on this issue.[2]

## IV. EVIDENTIARY ISSUES

Finally, defendant argues that he was denied his constitutional right to present a defense when the trial court limited the evidence he could present regarding the complainant, MS, and her sexual activity, under the rape-shield statute.

We review a trial court's evidentiary decisions for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217. We review de novo a claim that a defendant's constitutional right to present a defense was violated. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). We also review de novo a claim that a defendant's right to confront witnesses was denied. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011).

The United States and Michigan Constitutions guarantee a criminal defendant the right "to be confronted with the witnesses against him." US Const Am VI; Const 1963, art 1 § 20. The United States and Michigan Constitutions also provide a criminal defendant the right to present a defense. *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984); US Const Am VI, XIV; Const 1963, art 1 § 13. The right to present a defense is a fundamental element of due process, but it is not an absolute right. *Hayes*, 421 Mich at 279. "The accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *Id.*, quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

Michigan's rape-shield statute, MCL 750.520j, provides the following:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only

---

[2] In his brief on appeal, defendant alternatively argues that his trial counsel was ineffective for failing to object to the trial court's lack of instruction to the jury that it must begin deliberations anew once the alternate juror arrived. However, this issue is not before us to review because defendant did not raise it in his statement of the questions presented. MCR 7.212(C)(5); *Marx v Dep't of Commerce*, 220 Mich App 66, 81; 558 NW2d 460 (1996). Accordingly, we will not address defendant's arguments on this topic.

to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy or disease.

> (2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

Even if not admissible under MCL 750.520j(1)(a) or (b), prior sexual experiences of the victim may be admissible in certain circumstances. *People v Benton*, 294 Mich App 191, 197; 817 NW2d 599 (2011). In *People v Hackett*, 421 Mich 338; 365 NW2d 120 (1984), the Michigan Supreme Court explained as follows:

> The fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past. [*Id.* at 348 (citations omitted).]

"When applying the rape-shield statute, trial courts must balance the rights of the victim and the defendant in each case." *Benton*, 294 Mich App at 198.

Defendant has not shown that the trial court abused its discretion by limiting his testimony about MS's prior sexual acts. Below, defendant requested to admit evidence that MS had lied to others about her sexual history in the past and evidence concerning conversations defendant had with MS about her sexual history. The trial court properly ruled that defense counsel could question MS about her conversations with defendant regarding her sexual history to explain that MS had ulterior motives for bringing a charge against defendant. Specifically, defendant argued that MS fabricated her claims against him because she was afraid he would

-6-

expose her past sexual behavior to her parents. See *Hackett*, 421 Mich at 348 ("[E]vidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge."). Defendant elicited testimony from MS on this matter at trial.

The only testimony that the trial court refused to admit was testimony from MS's friend, AR, that MS had lied about her sexual activities in the past. The trial court did not abuse its discretion in doing so. Defendant was entitled to admit evidence that MS had made false allegations of rape in the past, not that she had lied about her consensual sexual activities. See *Hackett*, 421 Mich at 348 ("[T]he defendant should be permitted to show that the complainant has made false accusations of rape in the past."). However, whether MS was truthful to AR regarding her other consensual sexual acts outside of this incident was not relevant to the instant case. Given the trial judge's broad discretion in evidentiary matters, *People v Taylor*, 252 Mich App 519, 522; 652 NW2d 526 (2002), citing MCL 768.29, defendant has failed to show that the trial court's decision to limit his argument was an abuse of discretion. Moreover, because the trial court did not abuse its discretion by limiting defendant's argument, defendant has failed to show a violation of his constitutional rights to present a defense or to confront witnesses. See *Hayes*, 421 Mich at 279.

Affirmed.

/s/ Donald S. Owens
/s/ Henry William Saad
/s/ Michael F. Gadola

-7-