*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEWITT MCGOWAN, III,

Defendant-Appellant.

UNPUBLISHED
July 15, 2021

No. 351094
Wayne Circuit Court
LC No. 18-007401-01-FC

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

RICK, J. (*concurring in part and dissenting in part*)

I concur entirely with the majority's analysis and determination that defendant was not denied the right to a fair trial when the trial court declined to admit into evidence all of his proffered photographs and that the prosecutor presented sufficient evidence to convict defendant of second-degree murder. I respectfully disagree with the majority's conclusion that the trial court did not abuse its discretion when it denied defendant's motion for an evidentiary hearing to further inquire about the Google searches conducted by at least one juror and to determine whether other jurors were exposed to extrinsic evidence before rendering a verdict. Consequently, I would conclude that the court abused its discretion in this regard and remand the case with instructions for the trial court to hold an evidentiary hearing and to determine whether a new trial is required.

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012) (cleaned up). "A trial court's denial of a motion for a mistrial based on juror misconduct is an abuse of discretion only where the misconduct was such that it affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment." *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997). "A trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (cleaned up). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error, and the application of the law to those facts is reviewed de novo." *Id*. "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. (cleaned up.) "A trial court's factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake."

-1-

*Id.* (cleaned up.) Finally, to the extent we must consider questions of constitutional interpretation, our review is de novo. *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017).

A defendant has the right to a fair and impartial jury. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "During their deliberations, jurors may only consider the evidence that is presented to them in open court." *Id.* "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id.*

However, "not every instance of misconduct in a juror will require a new trial." *People v Fetterley*, 229 Mich App 511, 544; 583 NW2d 199 (1998) (cleaned up).

> The general principle underlying the cases is that the misconduct must be such as to affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment. A new trial will not be granted for misconduct of the jury if no substantial harm was done thereby to the party seeking a new trial, even though the misconduct is such as to merit rebuke from the trial court if brought to its notice. [*Id.* at 544-545 (cleaned up).]

Accordingly, in cases where a defendant alleges reversal on the basis of extraneous influences, a defendant must show (1) "that the jury was exposed to extraneous influences," and (2) "that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Budzyn*, 456 Mich at 88-89 (cleaned up). "Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id.* at 89. "If the defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt." *Id.* In determining whether an extraneous influence "created a real and substantial possibility" of prejudice to a jury's verdict, a trial court may consider a number of factors:

> (1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict. [*Id.* at 89 n 11 (cleaned up).]

The trial court denied defendant's motion for a new trial and, in the alternative, its request for an evidentiary hearing related to the alleged jury misconduct. Defendant argues that the trial court abused its discretion by doing so.

After the jury delivered its verdict, the prosecution met with the jury, which led it to believe that a juror wanted to or actually did conduct a Google search about the case. Juror SB voluntarily returned to the trial court for a hearing. She testified that she "googled" the case, but that she did not "see anything." However, SB also testified that the search returned something about the case and that she might have clicked on a link that resulted from the search, but that she did not think she saw anything. Further, although she initially testified that she did not read anything, she

testified that "[i]t was something real short." She also testified that another juror had "interest" in conducting an internet search to determine whether the basketball net allegedly installed by defendant on the day of the shooting actually existed. Based on SB's testimony alone, it was unclear whether another juror had actually conducted a Google search of the case, either before or after deliberations.

Despite SB testifying that she was actually exposed to the contents of a Google search about the case, the trial court concluded that she was not "exposed really to any information other than the fact that there was an article on the internet." Further the trial court concluded, "[I] simply don't find the fact that there might have been an article out there that talks about the homicide is enough to show that it would have affected the jury's verdict in that regard because this wasn't a question of identification of who it was that shot the decedent. That was on video." I would conclude that the trial court clearly erred by finding so because the remainder of the jury was not questioned about the potential exposure of the extrinsic evidence. Accordingly, I respectfully disagree with the majority that "there is no significant possibility that [SB's] Google search could have affected the verdict" or that "the trial court had no reason at all to conduct an evidentiary hearing." Rather, on the basis of this juror's testimony, I would conclude that the trial court abused its discretion by denying defendant's motion for an evidentiary hearing in order to further inquire into whether the jury was exposed to extraneous information and to determine whether a new trial was required.

/s/ Michelle M. Rick

-3-